**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

# FILED

**AUG 1 0 2012**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

```
                                   )
UNITED STATES OF AMERICA           )
                                   )
        v.                         )
                                   )        Criminal Case No. 12-113 (RBW)
ELIAS SPARKS,                      )
                                   )
            Defendant.             )
_____)
```

## MEMORANDUM OPINION

This case is before the Court on the defendant's Motion to Dismiss Indictment with

Prejudice ("Def.'s Mot."), in which the defendant, through counsel, asks the Court to "dismiss

with prejudice the Indictment against him based on the violation of [his] right to a speedy trial

under the Speedy Trial Act, 18 U.S.C. § 3161 . . . [(2006)]". Def.'s Mot. at 1. The government

opposes the motion. Government's Opposition to Defendant's Motion to Dismiss the Indictment

with Prejudice for Alleged Violation of Speedy Trial Act ("Gov't's Opp'n"). For the reasons

expressed below, the motion will be denied.[1]

---

[1]     In addition to the documents already referenced, in resolving the defendant's motion the Court considered
the Reply to Government's Opposition to Defendant's Motion to Dismiss Case with Prejudice for Violation of
Speedy Trial Act ("Def.'s Reply"). As will be noted below, this case is related to Criminal Case No. 11-60, which
the Court dismissed without prejudice on May 1, 2012. The parties' arguments in regard to the pending motion rely
on the procedural history of Criminal Case No. 11-60 and filings made in that case. It was therefore necessary to
consider the following documents and information from the record in Criminal Case No. 11-60:  the defendant's
Motion to Dismiss Case with Prejudice for Violation of the Speedy Trial Act ("Def.'s 11-cr-60 Mot."); the
Government's Opposition to Defendant's Motion to Dismiss the Indictment with Prejudice for Alleged Violation of
Speedy Trial Act ("Gov't's 11-cr-60 Opp'n"); the defendant's Reply in Support of Defendant's Motion to Dismiss
Case with Prejudice for Violation of Speedy Trial Act ("Def.'s 11-cr-60 Reply"); docket entries in the court file to
determine the dates of prior activity and Orders in the case; a draft copy of the transcript from the March 17, 2011
hearing held in the case; the defendant's Court-Ordered Supplemental Briefing in Support of Defendant's Motion to
Dismiss Case with Prejudice for Violation of Speedy Trial Act ("Def.'s 11-cr-60 Supp'l Brief"); the Government's
Supplement to Opposition to Defendant's Motion to Dismiss the Indictment with Prejudice for Alleged Violation of
Speedy Trial Act ("Gov't's 11-cr-60 Supp'l Brief"); the parties' oral arguments presented at the April 30, 2012
hearing; the defendant's Notice of Waiver of Appearance and Not Guilty Plea; the Government's Motion to Dismiss
the Indictment Without Prejudice ("Gov't's 11-cr-60 Mot. to Dismiss"); and the defendant's Notice of Appeal.

# I. BACKGROUND

A. <u>Factual and procedural history</u>

Criminal Case No. 11-60 commenced when the defendant was arrested and charged in a criminal complaint on February 2, 2011, Def.'s Mot. ¶ 1, alleging that the defendant did "unlawfully, knowingly, and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack," Criminal Complaint at 1, Criminal Case No. 11-60. He appeared before Magistrate Judge Alan Kay on February 3, 2011, at which point an oral motion for the appointment of counsel was made and granted. Judge Kay then scheduled a detention hearing for February 8, 2011. On February 8, 2011, the defendant conceded the government's request for his pretrial detention.

On March 3, 2011, the government indicted Mr. Sparks on one count of Unlawful Possession with the Intent to Distribute 28 Grams or More of Cocaine Base, Gov't's Opp'n at 1, under 21 U.S.C. § 841(a)(1) (2006). The defendant first appeared before this Court on March 17, 2011, whereupon counsel for the defendant raised questions regarding the defendant's mental competency. Def.'s Mot. ¶ 2. Specifically, at the defendant's first post-indictment appearance on March 17, 2011, defense counsel stated: "Your Honor, I believe Mr. Sparks needs to be arraigned, and then we're going to be requesting forensic screening. I don't think there is any opposition from the government on that. I can provide further information to the Court about why I'm requesting that." March 17, 2011 Hearing Transcript. Counsel for both parties then approached the bench, and defense counsel disclosed his reasons for requesting the forensic screening. <u>Id.</u> The Court granted from the bench the unopposed oral request from defense counsel for a forensic screening of the defendant, which it followed with a more detailed written Order issued on March 25, 2011. Gov't's Opp'n ¶ 2; Order, <u>United States v. Sparks</u>, 11-cr-60

(RBW) (D.D.C. March 25, 2011).  At the March 17 hearing, the Court also set a status hearing

for March 28, 2011, and, in the interests of justice due to the request for the forensic evaluation,

excluded the time between March 17, 2011, and March 28, 2011, from the Speedy Trial Act

clock.  Gov't's Opp'n ¶ 2.  The defendant was not arraigned and did not enter a plea of not guilty

during his March 17 appearance.  Id.

Having failed to receive the defendant's forensic screening by March 25, 2011, the Court

sua sponte continued the March 28, 2011 hearing to April 1, 2011.  Still not having received the

results from the forensic screening by April 1, the Court, again acting sua sponte, continued the

April 1 hearing to April 7, 2011.  On April 5, 2011, the Court finally received a letter from Dr.

Nancy Ingraham, a licensed clinical psychologist, in which she concluded that the defendant was

incompetent to participate in the court proceedings.  The Court informed the parties of Dr.

Ingraham's findings at the April 7, 2011 hearing, and scheduled a further status hearing for April

13, 2011.  Def.'s Mot. ¶ 3.  At the April 13, 2011 hearing, the Court granted defense counsel's

oral request to have the defendant's competency further evaluated by the Federal Bureau of

Prisons, and, on April 15, 2011, the Court issued a written Order invoking 18 U.S.C. § 4247

(2006) and committed the defendant to the custody of the Attorney General for thirty days for the

purpose of having a competency examination conducted, which was docketed by the Clerk of

Court on April 19, 2011.  Id. ¶ 4; Order, United States v. Sparks, 11-cr-60 (RBW) (D.D.C. April

19, 2011) ("April 19, 2011 11-cr-60 Order").  The time between April 13, 2011, and May 26,

2011, was excluded by the Court from the Speedy Trial Act clock pursuant to 18 U.S.C. §

3161(h)(1)(A).  April 19, 2011 11-cr-60 Order at 2.

Although the April 19, 2011 Order directed that the defendant be transferred to the

Federal Medical Facility at Butner, North Carolina ("the Butner facility" or "FMC Butner")

3

"forthwith," id., the Order was apparently not transmitted by the Clerk of the Court to the United

States Marshals Service until May 24, 2011, Gov't's Opp'n ¶ 3.[2]  After learning that the

defendant had not been transferred to the Butner facility until May 31, 2011, the Court

rescheduled the May 26, 2011 status hearing for July 7, 2011.  Id. ¶ 4.  On June 28, 2011, the

Court received a request from Butner Warden Tracy W. Johns for a fifteen-day extension of time

in which to evaluate the defendant; defense counsel did not object, and the Court granted the

request that same day.  Id.  The defendant's presence at the July 7, 2011 status hearing was

waived by defense counsel prior to that hearing, and the Court scheduled the next status hearing

for August 19, 2011.  Id.

Through a letter dated July 26, 2011, Warden Johns informed the Court, government

counsel, and defense counsel that it was the mental health evaluator's opinion that the defendant

suffered from a severe mental disease or defect, which prevented him from understanding the

nature and consequences of the proceedings against him and from assisting in his defense.

Order, U.S. v. Sparks, 11-cr-60 (RBW) (D.D.C. Aug. 19, 2011) ("August 19, 2011 11-cr-60

Order").  As a result of these findings, the defendant was deemed incompetent by the evaluator

and it was recommended that the defendant be committed for a period of mental health treatment

under the provisions of 18 U.S.C. § 4241(d) (2006).

On August 19, 2011, the Court conducted a status hearing at which the defendant was

present.  Gov't's Opp'n ¶ 5.  Neither party objected to the conclusion reached or the

recommendation made in the July 26, 2011 letter, and the Court ruled that based upon a

---

[2]      The Court has learned, both as a result of its own investigation and through representations made by the
government, that this transmission error was the result of an employee of the Clerk's Office failing to adhere to the
official procedure for the transfer of Orders to the Marshals Service, as the official procedure requires that Marshals
Servie transfer Orders be recorded in a log book.  See Gov't's 11-cr-60 Opp'n at 3, n.1 (explaining that the Deputy
Courtroom Clerk hand-delivered the Order to the Marshals Service, and suggesting that this may explain why the
Marshals Service log does not reflect receipt of the Order).

preponderance of the evidence, the defendant was incompetent to stand trial. Id. The Court

orally ordered that the defendant be returned to the Butner facility for treatment with the

objective of restoring his competency. Id. The Court scheduled the next status hearing for

January 5, 2012, and excluded the time between August 19, 2012, and January 5, 2012, from the

Speedy Trial Act clock under 18 U.S.C. § 3161(h)(4). Id. On August 19, the Court issued a

written Order memorializing the oral rulings made at the status hearing earlier that day. August

19, 2011 11-cr-60 Order. Again, however, the Order was not delivered to the Marshals Service

by the Clerk of the Court in a timely fashion, and the Marshals Service did not receive the

August 19, 2011 Order until December 16, 2011.[3] Gov't's Opp'n ¶ 5.

Upon learning, on December 15, 2011, that the defendant had not been returned to FMC

Butner, the Court scheduled a status hearing for December 16, 2011. Id. ¶ 6. At the December

16, 2011 hearing, defense counsel orally moved for dismissal of Criminal Case No. 11-60 with

prejudice on the grounds that the failure to transport the defendant to FMC Butner as ordered

violated the Speedy Trial Act. Id. The Court declined to rule on the oral motion at that time and

ordered the parties to brief the issue. Id. The Court again ordered that the defendant be

transferred to FMC Butner, specifying that the transfer was to take place "immediately." Order,

United States v. Sparks, 11-cr-60 (RBW) (D.D.C. December 16, 2011). The Court also

scheduled a status hearing for April 20, 2012.

The defendant eventually arrived at FMC Butner on January 17, 2012, after being housed

at another facility from January 5, 2012, to January 17, 2012, due to the unavailability of a bed at

FMC Butner. Gov't's Opp'n ¶ 6. Then, on January 30, 2012, the Court denied a request made

---

[3]     The transmission error described in note 2, supra, again delayed the Marshal Service's receipt of the
August 19, 2011 Order. See Gov't's Opp'n at 3, n.1. The Court regrets that these errors occurred, and, although the
issue is largely out of the Court's control, the Court has taken action in conjunction with the Clerk of the Court to
ensure that such failures do not occur in the future in this or any other case.

by Sara M. Revell, Complex Warden at FMC Butner, for an extension of time to June 4, 2012, in

which to treat the defendant.  Order, United States v. Sparks, 11-cr-60 (RBW) (D.D.C. January

30, 2012).  The Court further ordered that a competency report containing sufficient information

for it to make the determinations necessary to order further detention under 18 U.S.C. § 4241(d)

be furnished to the Court by no later than April 6, 2012.

On April 4, 2012, after "[c]onsidering the fact that a plea of not guilty has seemingly

never been entered in this case," and the fact that "rulings by other Circuit Courts of Appeals

suggest the conclusion that the defendant's motion must be denied because the Speedy Trial Act

does not yet apply to this case," the Court directed the parties to "submit their positions as to

whether the Speedy Trial Act applies in this case."  Order, United States v. Sparks, 11-cr-60

(RBW) (D.D.C. April 4, 2012) ("April 4, 2012 11-cr-60 Order").  Because defense counsel was

unavailable on April 20, 2012, the status hearing previously scheduled for that date was

continued to April 30, 2012.

On April 27, 2012, defense counsel filed a Notice of Waiver of Appearance and Not

Guilty Plea, which had been signed by the defendant earlier that day.  Def.'s Mot. ¶ 11.  That

same day, but after the filing of the defendant's waiver, the government filed a Motion to

Dismiss the Indictment Without Prejudice.  Id.  The government opined that a ruling on its

motion to dismiss the indictment would "render the defendant's request for the Court to accept

his not guilty plea moot."  Gov't 11-cr-60 Mot. to Dismiss at 1-2, n.1.  The government also

represented that it intended on reindicting the defendant on May 1, 2012.

At the April 30, 2012 hearing, the Court granted the government's motion to dismiss

Criminal Case No. 11-60 without prejudice, mooting the need to accept the defendant's not

guilty plea and foreclosing argument on whether the dismissal should be with prejudice.[4]  Def.'s

Mot. ¶ 12.  In the Order issued immediately after the April 30, 2012 hearing, the Court noted the

fact that defense counsel objected to the Court having granted the government's motion before

the acceptance of the defendant's not guilty plea, but indicated that "whether the defendant had a

right to enter his plea of not guilty before the Court granted the government's motion is an issue

that can be raised after this case is reindicted."  Order, United States v. Sparks, 11-cr-60 (RBW)

(D.D.C. May 1, 2012) ("May 1, 2012 11-cr-60 Order").

      As promised, the government reindicted the defendant on May 1, 2012, giving rise to this

case, Criminal Case No. 12-113.  On May 16, 2012, the Court approved and accepted the

defendant's Waiver of Appearance and Entry of Plea of Not Guilty, which was substantively

identical to what was submitted to the Court in Criminal Case No. 11-60 on April 27, 2012.

Def.'s Mot. ¶ 13.  On May 21, 2012, the defendant, through counsel, filed a notice of appeal in

Criminal Case No. 11-60, indicating his belief that "dismissal should have been with prejudice."

Notice of Appeal at 1.

      B.  The parties' arguments

      In filings made prior to the April 30, 2012 hearing, the parties agreed that Mr. Sparks had

not yet entered a plea of not guilty.  See Def.'s 11-cr-60 Supp'l Br. at 1; Gov't's 11-cr-60 Supp'l

Br. at 2.  The parties further agreed that the Speedy Trial Act does not apply in a case in which a

defendant has not entered a not guilty plea.  See Def.'s 11-cr-60 Supp'l Brief at 1-2; Gov't's 11-

cr-60 Supp'l Br. at 1-2.  The parties disagreed, however, on whether, in a case where the not

guilty plea is entered well after the filing of the indictment, the Speedy Trial Act clock is

triggered (1) by the filing of the indictment, see Def.'s 11-cr-60 Supp'l Br. at 7 ("[T]he defense

---

[4]      The parties conceded that it was unnecessary to order the defendant's release from FMC Butner in light of the fact that he would be immediately reindicted.  April 30, 2012 Hearing Transcript.

respectfully submits that Mr. Sparks's Motion to Dismiss can and should be granted as soon as

he is given the opportunity to enter his plea of not guilty in this matter."), or (2) by the defendant

entering his plea of not guilty, Gov't's 11-cr-60 Supp'l Br. at 7 ("The government submits that

no violation of the [Speedy Trial Act] has occurred because the defendant has not triggered its

application through the entry of a not guilty plea."). The government asserted that, should the

Court "determine that upon entry of a not guilty plea[,] the [Speedy Trial Act] clock would be

calculated to run from the date of the defendant's . . . indictment," Gov't's Suppl. Br. At 7, it

would rely on the  argument that "18 U.S.C. § 3161(h)(4) trumps [the] transportation rule set

forth in section 3161(h)(1)(F),"[5] Gov't's 11-cr-60 Opp'n at 6.

In addition to the arguments advanced in support of his motion to dismiss filed in

Criminal Case No. 11-60, Def.'s Mot. at 7 ("For the same reasons stated in Mr. Sparks' January

6, 2012 Motion to Dismiss and the February 9, 2012 Reply, Mr. Sparks[] respectfully moves the

Court to dismiss the Indictment with prejudice."), the defendant's current motion asserts that the

dismissal of Criminal Case No. 11-60 without prejudice did not cure the Speedy Trial Act

violations that he claims occurred in that case; rather, the defendant maintains, those violations

required the dismissal to be with prejudice. Def.'s Mot. at 7. The defendant further argues that

"the Court should have accepted [his] written plea of not guilty" that was "submitted to the Court

on April 27, 2012," id. at 8, and that "the Court was without discretion to reject the not guilty

plea," id. at 9.

---

[5]        As will be explained more thoroughly below, the defendant's motion to dismiss and the government's
opposition present argument as to which section of the Speedy Trial Act best captures the delays in this case.  The
defendant asserts that the "transportation" exclusion set forth at 18 U.S.C. § 3161(h)(1)(F) is the controlling
exclusion, while the government contends that an exclusion generally pertaining to the competency of a defendant
and set forth at 18 U.S.C. § 3161(h)(4)  is the more appropriate subsection to apply to the facts of this case.

## II. LEGAL ANALYSIS

The defendant's motion to dismiss in the case now before the Court requires the Court to

examine three issues: (1) the requirements for the application of the Speedy Trial Act, 18 U.S.C.

§ 3161, and the commencement of the Act's 70-day limitation period; (2) the circumstances

under which Speedy Trial Act violations require dismissal with prejudice; and (3) the Court's

discretion to accept or reject pleas made pursuant to Federal Rule of Criminal Procedure 10.

Each of these three topics will be addressed in turn.[6]

A. <u>The Application of the Speedy Trial Act and the Start of the Speedy Trial Act Clock</u>

The Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant
> charged in an information or indictment with the commission of an offense shall
> commence within seventy days from the filing date (and making public) of the
> information or indictment, or from the date the defendant has appeared before a
> judicial officer of the court in which such charge is pending, whichever date last
> occurs.

18 U.S.C. § 3161(c)(1).  Accordingly, "the Speedy Trial Act applies only to cases in which the

defendant has entered a not guilty plea." <u>United States v. Tinkleberg</u>, 579, F.3d 589, 594 (6th

Cir. 2009), <u>aff'd other grounds</u> <u>United States v. Tinkleberg</u>, __ U.S. __, 131 S. Ct. 2007 (2011).

And, in regard to the Speedy Trial Act's seventy-day provision,

> [t]he statute provides only two dates that can start the clock: the date of the
> indictment or the date the defendant has appeared. Section 3161(c)(1)'s
> requirement that a defendant's trial commence by a certain date if the case is one
> "in which a plea of not guilty is entered" determines only <u>whether</u> the time
> restrictions apply.  It does not determine <u>when</u> the clock starts.

<u>United States v. Lopez-Valenzuela</u>, 511 F.3d 487, 490 (5th Cir. 2007) (emphasis in original)

(quoting 18 U.S.C. § 3161(c)).

---

[6]      As will be explained in greater detail below, because the Court concludes that the defendant's appeal of the
Court's Order in Criminal Case No. 11-60 was untimely, the Court has not been divested of jurisdiction to
adjudicate these issues.

"Begin[ning] with 'the language itself [and] the specific context in which that language is used,'" McNeil v. United States, __ U.S. __, __, 131 S. Ct. 2218, 2221 (2011) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)), this Court, like the Fifth Circuit in Lopez Valenzuela, "can find no basis . . . from the text of 3161(c)(1) for utilizing the date of a not guilty plea as the commencement date of the seventy-day period." 511 F.3d at 490. An explication of the statutory text makes clear that the entering of a plea of not guilty is the sole factor necessary to make the statute, and consequently its various provisions, apply to any given case.[7] Once the statute applies to a case, the statute just as clearly establishes only two points from which the Speedy Trial clock[8] can start to run. In other words, the statute clearly contemplates that it is the later-occurrence of either the date of the indictment or the date of the defendant's first appearance that will trigger the start of the Speedy Trial clock. It seems, then, that there are two questions that must be answered in response to a motion to dismiss alleging the violation of the Speedy Trial Act: first, does the Act apply?; and second, when did the Speedy Trial clock begin to run?[9]

The government contends in its supplemental brief that "[i]n the [April 4, 2012] Order, the Court noted that it appeared that the [Speedy Trial Act] did not apply in this case because the defendant had not yet entered a plea of not guilty as required by 18 U.S.C. § 3161(c)(1), and therefore the Speedy Trial [c]lock had not yet been triggered." Gov't's 11-cr-60 Supp'l Brief at

---

[7]     Although the defendant advances the argument that "Mr. Sparks was constructively arraigned in [Criminal Case No. 11-60]," Def.'s Mot. at 8, the Court is unwilling to go against the clear language of the statute that a plea of not guilty must be entered in the absence of any authority on point.

[8]     This Court, "like many other courts, will use the metaphor of a clock to keep track of the periods of delay under the [Speedy Trial Act]." United States v. O'Dell, 154 F.3d 358, 360 n.2 (6th Cir. 1998) (citing United States v. Rodriguez, 63 F.3d 1159, 1162 (1st Cir. 1995)).

[9]     As will be addressed below, and as is the case in addressing the defendant's motion here, a third question will also often have to be answered: are any of the Act's provisions for tolling the clock or excluding time implicated by the facts or procedural history of the case?

1-2.  While technically an accurate parsing of the Court's April 4, 2012 Order, it is important to

note that the sole focus of the Order was ascertaining whether the Speedy Trial Act applied to

this case.  See April 4, 2012 Order at 6 (noting that authority from other Circuit's suggested that

the Speedy Trial Act "did not yet apply") (emphasis added); id. at 7 (directing the parties to

submit their positions on "whether the Speedy Trial Act applies in this case") (emphasis added).

Obviously, if the Speedy Trial Act does not apply to a particular case, the Act's seventy-day

provision does not apply and there is no concern in regard to when the seventy-day clock was, or

was not, triggered.  It does not stand to reason, however, that the clock can only be triggered

once a plea of not guilty is entered and the Act is thus applicable.  Indeed, as explained above,

the statutory text makes clear that the applicability of the Act is separate from when, if the Act

applies, its seventy-day provision commences.  To borrow the Fifth Circuit's clear explanation of

the difference between the applicability of the Act and the start of the running of the Speedy

Trial clock, "[s]ection 3161(c)(1)'s requirement that a defendant's trial commence by a certain

date if the case is one 'in which a plea of not guilty is entered' determines only whether the time

restrictions apply.  It does not determine when the clock starts." Lopez-Valenzuela, 511 F.3d at

490.

   A number of courts have seemingly conflated the applicability of the Speedy Trial Act

with the commencement of the Speedy Trial clock, which this Court views as a derogation of the

statutory text.  See, e.g., O'Dell, 154 F.3d at 360 ("The plain meaning of the language of the

[Speedy Trial Act] requires a not guilty plea to begin the clock running."); United States v.

Nixon, 779 F.2d 126, 130 (2d. Cir. 1985) ("[T]he statute expressly applies only to cases in which

pleas of not guilty have been entered.  It is evident, therefore, that the July 13 plea started the

Speedy Trial Act clock in this case.").[10]  Regardless of the positions taken by other Circuit

Courts of Appeals, this Court finds that the position taken by the Fifth Circuit in <u>Lopez-</u>

<u>Valenzuela</u> best comports with the text of the Speedy Trial Act itself.  <u>See also</u> <u>United States v.</u>

<u>Carrasquillo</u>, 667 F.2d 382, 384 (3d Cir. 1981) (holding "that the district court erred by

calculating the statutory seventy-day period from the date of Carrasquillo's postindictment

arraignment rather than from the date the indictment was filed").  And because the District of

Columbia Circuit has not addressed the issue, the Court may follow the path of those prior courts

whose logic and reasoning it finds most persuasive.

　　　In light of the foregoing, it is clear that had the Court accepted the defendant's April 30,

2012 entry of his plea of not guilty, the Speedy Trial Act would have been applicable to this

case.  It is likewise apparent that, as the filing of the Indictment in Criminal Case No. 11-60

occurred after the defendant's initial appearance, the Speedy Trial clock was triggered on March

4, 2011, the day following the filing of the Indictment in that case.  <u>See</u> Def.'s Supp'l Brief at 2

n.2 ("Mr. Sparks acknowledges that the day of the event triggering the Speedy Trial Act clock

(here, March 3, 2011) is not included in the 70-day calculation.") (citing <u>United States v.</u>

<u>Stoudemire</u>, 74 F.3d 60, 63 (4th Cir. 1996) ("In determining this 70-day period, the day of the

event that triggers the [Speedy Trial Act] clock, i.e., the filing or opening of the indictment or the

initial appearance, is not included in the calculation; the clock begins to run the following

day.")).

---

[10]　　　As the defendant points out in his supplemental brief, the Court's April 4, 2012 Order cites some of these
cases with approval.  <u>See</u> April 4, 2012 Order at 6.  That Order, as just noted however, dealt only with the
applicability of the Speedy Trial Act, and the cases were cited only for their recognition that, without a plea of not
guilty, the Speedy Trial Act—and its attendant provisions—is inapplicable.  The Court did not mean to imply that it
approved of the determinations made in these cases concerning the entering of a plea of not guilty and the triggering
of the Speedy Trial clock.  If that implication was unintentionally conveyed, this Memorandum Opinion should
clarify the Court's position: when a plea of not guilty is entered <u>after</u> the occurrence of one of the two bases for
commencing the running of the clock, as in this case, the running of the Speedy Trial clock must nonetheless be
calculated back to either the filing of the indictment or the defendant's intial appearance, whichever occurred later.

Next, having concluded that the Speedy Trial Act would have been applicable to Criminal Case No. 11-60 as of April 30, 2012, and that the running of the Speedy Trial clock dates back to March 3, 2011, the Court must now determine whether any of the Act's various exclusions would have impacted that case, thus tolling the Act's seventy-day provision. Because the parties' arguments focus on the delay from August 19, 2011 to December 16, 2011, and because this period of time is alone sufficient to find a violation of the Act if not excludable, the Court's analysis concerns only this period of time.

As noted above, the parties ask the Court to ascertain whether 18 U.S.C. § 3161(h)(1)(F) or § 3161(h)(4) better encompasses to the delay occasioned in Criminal Case No. 11-60. Section 3161(h)(1)(F) provides for the exclusion of time caused by transporting a defendant, but contains a significant limitation:

> Delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization [shall be excludable], except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable.

18 U.S.C. § 3161(h)(1)(F) (emphasis added). Section 3161(h)(4), on the other hand, provides for the exclusion of "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4).

The government asserts "that after a determination of incompetence has been made, section 3161(h)(4) trumps section [3161](h)(1)(F)." The Court disagrees. The two statutory subsections both contain the clause "resulting from," and while the Supreme Court recently clarified that this language does not require that the excludable event in question actually cause a delay of the trial, see Tinkleberg, __ U.S. __, 131 S. Ct. at 2012-13 (finding that the exclusions are automatic, whether or not trial delay occurs), Tinkleberg does not diminish the clear import

of what must give rise to the applicability of the exclusion itself.  In other words, while an excludable event need not cause an actual delay to be applicable, a given exclusion must actually be the cause of the excludable event to be applicable.  To that end, the delays in this case were caused by (i.e., resulted from) a failure to transport the defendant to FMC Butner for court-ordered psychiatric treatment.  See Def.'s Reply at 2 ("It is beyond dispute that the delay in this case was not the result of the defendant's incompetence; it was the result of a failure to deliver the Court's August 19, 2011 Order to the Marshals and the subsequent over four months of time it took to transport Mr. Sparks to [FMC] Butner.").  The fact of the defendant's incompetency had little to do with the delay, other than giving rise to the need to transport him for treatment.  The Court thus agrees with the defendant that "[o]nly once at [FMC] Butner could it be said that the delay in this case '[resulted] from the fact that the defendant is mentally incompetent.'"  Id.

Again, the language of the statute itself is instructive.  Section 3161(h)(1)(F) pertains to transportation delays occasioned by the transfer of a defendant to another location for either examination or hospitalization.  This latter component—hospitalization—seemingly distinguishes the transportation exclusion from the more general "incompetency" exclusion found in section 3161(h)(4).  For example, the government urges that once a defendant is found to be incompetent, any and all delay may be excluded under section 3161(h)(4).  Gov't's 11-cr-60 Opp'n at 8.  Because, however, hospitalization for treatment often occurs after a finding of incompetence by a court, it is apparent that the transportation exclusion of § 3161(h)(1)(F) is to be read separately from the incompetency provision of § 3161(h)(4).  Such a reading comports with the doctrine of statutory interpretation that no part of a statute should be read to exist as "mere surplusage."  See United States v. Noone, 913 F.2d 20, 26 n.5 (1st Cir. 1990) (observing that "any other interpretation would render mere surplusage the specific reference . . . to

transportation 'to and from places of hospitalization'"); see also United States v. Lewis, 484 F.

Supp. 2d 380, 386-387 (W.D. Pa. 2007) (opining that reading the transportation delay exclusion

out of the statute would mean that "defendants who are subjected to extraordinary transportation

delays at the hands of the [United States] Marshals Service would otherwise be without recourse,

contrary to the apparent purpose" of the transportation exclusion). Accordinlgy, "as the

government offer[ed] no explanation of the transporation delay, it . . . failed to rebut the

presumption of nonexcluability," Noone, 913 F.2d at 26 (citing United States v. Jervey, 630 F.

Supp. 695, 697 (S.D.N.Y. 1986) ("[O]rdinary institutionalized delay is not an excuse. When [the

Speedy Trial Act] was passed Congress knew all about the customs and practices of the prison

bus.")). Therefore, the 119 days between August 19, 2011, and December 16, 2011, are well in

excess of the ten days presumed to reasonable under 18 U.S.C. § 3161(h)(1)(F), and are therefore

not excludable under the Act. Regrettably, the defendant's Speedy Trial Act rights would have

been violated in Criminal Case No. 11-60 had the Act applied during that period of time.[11]

B. Should the Dismissal of Criminal Case No. 11-60 have been with or without prejudice?

Before assessing the question of whether the Speedy Trial Act violation that would have

occurred had the Act applied merited dismissal of the case with or without prejudice, the Court

must explain how it possesses the ability to answer this question despite the defendant's pursuit

of an appeal on this very issue. It is "generally understood that a federal district court and a

federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The

filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on

---

[11]    The Court has previously acknowledged that "some of its prior Orders . . . specifically cited the Speedy Trial Act," and explained that it "was only in acting on the defendant's motion to dismiss [in Criminal Case No. 11-60] that the Court began to have questions as to whether the Speedy Trial Act indeed applie[d] to [that] case." April 4, 2012 11-cr-60 Order at 7, n.4.

the court of appeals and divests the district court of its control over those aspects involved in the appeal." Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). It is equally understood, however, that the "time limits set out in [Federal Rule of Appellate Procedure 4] are 'mandatory and jurisdictional.'" United States v. Feuver, 236 F.3d 725, 727 (D.C. Cir. 2001) (quoting Browder v. Dep't of Corrections, 434 U.S. 257, 264 (1978)); see also Moore v. South Carolina Labor Bd., 100 F.3d 162, 163 (D.C. Cir. 1978) (concluding that the time limits established by Federal Rule of Appellate Procedure 4 are "mandatory and jurisdictional"). Accordingly, "[w]here the deficiency in a notice of appeal, by reason of untimeliness . . . , is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." Ruby v. Sec'y, United States Navy, 365 F.2d 385, 389 (9th Cir. 1966).

Federal Rule of Appellate Procedure 4 provides that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or order being appealed; or (ii) the filing of the government's notice of appeal."[12] Fed. R. App. P. 4(b)(1)(A). And Federal Rule of Appellate Procedure 26 explains that for purposes of computing time under the Rules:

> When the period is stated in days or a longer unit of time: (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. App. P. 26(a)(1).

As noted above, the Order dismissing Criminal Case No. 11-60 without prejudice was entered on May 1, 2012. It was not until May 21, 2012, that defense counsel filed a notice of

---

[12]     Although the Rule makes provisions for inmates confined in an institution, see Fed. R. App. P. 4(c), those provisions are not implicated here as notice was entered by defense counsel and not mailed by the defendant.

appeal dated with that same date.  11-cr-60 Notice of Appeal at 1.  Under the above appellate

rules, to be timely filed, a notice of appeal seeking review of the May 1, 2012 Order, had to be

filed by no later than May 15, 2012.  Because the defendant's notice of appeal is untimely on its

face, the Court has not been divested of jurisdiction over the question previously presented in

Criminal Case No. 11-60 and now before the Court in this case, Criminal Case No. 12-113.

      Having concluded that the defendant's Speedy Trial Act rights would have been violated

in Criminal Case No. 11-60 had the Speedy Trial Act applied in that case and that the

defendant's appeal of this question was untimely, the Court must ascertain whether that violation

would have rendered the Indictment subject to dismissal with or without prejudice.  See

Carrasquillo, 667 F.2d at 384 ("Dismissal of an indictment is mandatory if the section 3161(c)

time limits, as extended by section 3161(h), are not met.") (citing 18 U.S.C. § 3162(a)(2)).  "In

determining whether to dismiss [a] case with or without prejudice, [a] court shall consider each

of the following factors: the seriousness of the offense, the facts and circumstances of the case

which led to the dismissal; and the impact of a reprosecution on the administration of this chapter

and on the administration of justice." 18 U.S.C. § 3162(a)(2).  "[T]he Supreme Court has

observed that Congress left the prejudice decision 'to the guided discretion of the district court.'"

United States v. Wright, 6 F.3d 811, 813 (D.C. Cir. 1994) (quoting United States v. Taylor, 487

U.S. 326, 335 (1988)).  And while "[t]he Speedy Trial Act requires the court to discuss each of

the statutory factors and to make a reasoned decision, . . . it does not mandate any particular

formula or order of decisionmaking."  Wright, 6 F.3d at 816.

      Based on an analysis of the above factors, the Court finds that, had the Speedy Trial Act

applied, the dismissal of Criminal Case No. 11-60 should have been without prejudice.  First, the

defendant was indicted for the offense of Unlawful Possession with Intent to Distribute 28

Grams or More of Cocaine Base, also known as crack, which is undoubtedly a serious offense. The government represents that the evidence supporting the charge was that "police recovered the cocaine base, which had a gross weight of approximately 131 grams, [from Mr. Sparks's home]," and that "[a]t the time of the defendant's arrest in this case, he was on release [in a case pending before the Superior Court of the District of Columbia], in which he was charged with Unlawful Possession with Intent to Distribute Cocaine in a Drug Free Zone." Gov't 11-cr-60 Opp'n at 11. The quantity of cocaine base the defendant is accused of possessing for the purpose of distribution and the fact that it was in the defendant's possession while he was on release pending the outcome of another serious drug-distribution-related offense, both further support the seriousness of the defendant's conduct. Moreover, the Court disagrees with the defendant's suggestion that "[t]his case . . . does not belong in federal court, but instead in Superior Court, which is the court that should be handling all or nearly all cases of street-level drug distribution." Def.'s 11-cr-60 Reply at 7. Where the government alleges that a crime has been committed, it is the government's prerogative to prosecute the alleged crime in the forum it deems appropriate. Second, the facts and circumstances underlying the dismissal that would have been occasioned by the Speedy Trial Act violations can best be characterized as administrative errors, and not the result of gamesmanship or malice on the part of the government for the purpose of obtaining a technical advantage. See United States v. Bauer, 286 F. Supp. 2d 31, 34 (D.D.C. 2003) (concluding that dismissal would be without prejudice because "the failure to comply with [the transportation order] was not willful or malicious and the government ha[d] not sought and certainly ha[d] not gained any tactical advantage by the delay"). Thus, while the Court agrees with the defendant that the two failures to properly transmit the Court's orders to the Marshals Service were indeed "negligent," Def.'s 11-cr-60 Reply at 7, this negligence must be imputed to

the Clerk's Office and not to the prosecution.  Finally, whether reprosecution would have had an

adverse impact on the administration of justice "cannot be viewed in isolation from the other

[two factors]."  Wright, 6 F.3d at 816.  In Criminal Case No. 11-60, then, in light of the

conclusion that the "defendant's crime was serious and that the [Speedy Trial Act] violation was

unintentional," id., and not attributable to the prosecutor, reprosecution would not have had an

adverse impact on the administration of justice.


      C.  <u>Was the Court Required to Accept the Defendant's Rule 10 Plea of Not Guilty?</u>

      In pertinent part, Federal Rule of Criminal Procedure 10 provides:

> A defendant need not be present for the arraignment if: (1) the defendant has been
> charged by indictment or misdemeanor information; (2) the defendant, in a
> written waiver signed by both the defendant and defense counsel, has waived
> appearance and has affirmed that the defendant received a copy of the indictment
> or information and that the plea is not guilty; and (3) the court accepts the waiver.

Fed. R. Crim. P. 10(b).  The Advisory Committee Notes explain that "[t]he question of when it

would be appropriate for a defendant to waive an appearance is not spelled out in the rule.  That

is left to the defendant and the court in each case." Fed. R. Crim. P. 10, Advisory Committee

Notes to 2002 Amendments.

      On the other hand, Federal Rule of Criminal Procedure 48 allows the government to

dismiss an indictment after obtaining "leave of court."  Fed. R. Crim. P. 48(a).  "Historically, the

prosecutor had unrestricted authority to enter a nolle prosequi at any time before the empaneling

of the jury, and such a dismissal was unencumbered by any restriction on a renewal of the

charges." United States v. Poindexter, 719 F. Supp. 6, 10 (D.D.C. 1989) (internal citations

omitted).  Rule 48(a) now, however, "requires leave of court for such a dismissal," and

> [w]hile a court is still not free to substitute its judgment for that of the prosecutor,
> whose decision is deemed valid, the Rule has the effect of granting authority to

the court in exceptional cases to reject a dismissal without prejudice—which would allow reprosecution—if this would result in harassment of the defendant or would otherwise be contrary to the manifest public interest.

Id. (emphasis added). "Accordingly, although there remains a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused." Id. "[T]he primary concern of courts which have rejected dismissals without prejudice was that of protecting a defendant from harassment, . . . and 'commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" Id. at 11 (quoting United States v. Ammidown, 497 F.2d 615, 620 (D.C. Cir. 1973)) (emphasis in original).

As noted above, the defendant argues that "[g]iven [his] full compliance with Rule 10(b) and the lack of any factual findings to the contrary, the Court was without discretion to reject the not guilty plea," Def.'s Mot. at 9, on April 30, 2012, and that "the Court erred in dismissing [Criminal Case No. 11-60] without first scrutinizing the government's motive in filing for dismissal," Def.'s Reply at 2. The Court does not agree. As an initial matter, the defendant's arguments are premised on the assumption that he was entitled to a dismissal with prejudice due to the underlying Speedy Trial Act violation, see Def.'s Mot. at 7, which is not accurate. Next, although there is no quibble from the Court that the defendant properly complied with the requirements of Rule 10 (as evidenced by the Court's ultimate acceptance of that waiver in Criminal Case No. 12-113), the Rule plainly affords discretion to the Court whether to accept such a waiver. And while the defendant is correct that the advisory committee notes speak to the circumstances under which the Court should exercise its discretion, see id. at 9, it bears emphasis that the Court did not reject the defendant's Rule 10 waiver, it simply took a different course of action that in short order mooted the issue. See Gov't's Opp'n at 5 ("Ultimately, the action taken

by this Court at the hearing on April 30, 2012, was not to refuse to accept the defendant's [R]ule 10(b) waiver, but rather, to grant the government's motion to dismiss the indictment. The action taken by the Court merely mooted the necessity of ruling on the defendant's rule 10(b) waiver request."). Accordingly, the Court views the issue differently than the defendant: the waiver was not rejected, it was simply not considered in light of the posture of the case. In other words, the Court could have accepted the waiver and assessed the Speedy Trial Act issues, or granted the motion to dismiss the indictment—but there was no need to do both. Because, as demonstrated above, the dismissal sanctioning the government for the Speedy Trial Act violation would have been without prejudice, either course of action would have resulted in the same outcome. See Gov't's Opp'n at 5 (asserting that "the ultimate dismissal of the indictment without prejudice afforded the defendant the remedy to which he otherwise would have been entitled").

The Court also finds the defendant's related Rule 48 argument unpersuasive. The defendant was immediately reindicted, in the same district, before the same judge, and his case is being prosecuted by the same Assistant United States Attorney. It is thus difficult to conceive how the prosecution orchestrated a "more favorable prosecution" by dismissing Criminal Case No. 11-60. And as this is the "primary concern," Poindexter, 719 F. Supp. at 10, of the Court's Rule 48 inquiry, the defendant's argument is rejected.

### III. CONCLUSION

For the above reasons, the defendant's motion to dismiss the indictment in this case with prejudice based on his claim that Criminal Case No. 11-60 should have been dismissed with prejudice is denied.[13]

---

[13]     The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

**SO ORDERED** this ⁹ᵗ day of August, 2012.

REGGIE B. WALTON
United States District Judge